# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SHERILLE HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case number 4:11cv0411 TCM |
| ) | |
| PATRICK R. DONAHOE, ) | |
| POSTMASTER GENERAL, UNITED ) | |
| STATES POSTAL SERVICE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Pending in this pro se employment discrimination action is a motion filed by defendant, Patrick Donahoe, Postmaster General, United States Postal Service (Donahoe), to dismiss or, alternatively, for summary judgment and a motion filed by plaintiff, Sherille Harris, for summary judgment.[1]

## Background

Plaintiff, an African-American woman over the age of 40, is an employee of the United States Postal Service (USPS) and, at all times relevant, worked at a branch in Maryland Heights, Missouri. (Def. Stat.[2] ¶ 1.)

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]References to "Stat." are to those allegations in Defendant's Statement of Uncontroverted Facts that are not controverted by Plaintiff and are otherwise supported by Defendant's evidence. Additionally, the Court notes that Plaintiff has failed to submit a statement of material facts as to which she contends a genuine issue exits, as required by Local Rule 4.01(E) of the Eastern District of Missouri, or to otherwise contravene Defendant's twenty statements of material facts. See **Reasonover v. St. Louis Cnty., Mo.**, 447 F.3d 569, 579 (8th Cir. 2006) (district court did not abuse discretion in deeming facts set forth in motion for summary judgment under E.D.Mo.L.R. 4.01(E)

In February 2010, she filed a completed Information for Pre-Complaint Counseling form with her agency's regional Equal Employment Opportunity (EEO) office. (Def. Mot. Ex. A at 1, ECF 5-1.) In that portion of the form requesting that the factors for the discrimination be listed, Plaintiff identified race (African-American), color (black), age (over 40 years old), sex (female), and disability (mental depression). (Id.) She also included retaliation and listed two dates on which she engaged in EEO activity: August 6, 2008, and January 2000. (Id.)

In that portion of the form requesting a narrative description of the discriminatory acts, Plaintiff wrote about events on two days: February 16, 2010, and February 20, 2010. (Id. at 1-5.) Both events concerned an internal unit observation Plaintiff contends was performed in response to a "mystery shopper's" evaluation of the branch's customer service. (Id. at 2.) On February 16, Plaintiff was one of three employees working at the window during the observation. (Id.) When she was on break, she was approached by a break carrier supervisor, a Caucasian female, who asked her to return to the window because the line was backing up in the lobby. (Id.) She replied that she was not the only clerk working and that there were two other clerks at the window. (Id.) She noted that management was not concerned about the line backing up when a co-worker, Richard Schlogel, a Caucasian male, went on breaks for thirty minutes.[3] (Id.)

---

where no timely response was filed); **Ridpath v. Pederson**, 407 F.3d 934, 936 (8th Cir. 2005) (finding that factual allegation in defendants' statement of uncontroverted material facts was admitted given plaintiff's failure to controvert statement as required by E.D.Mo.L.R. 4.01(E)).

[3] It is not clear from Plaintiff's complaint whether she noted this to the break carrier supervisor or to the Acting Postmaster, Karla Rose, a Caucasian female, who was conducting the internal unit observation.

On February 20, Rose, see note 3, supra, told another carrier supervisor, Grant McCoy, an African-American male, to inform Plaintiff that she needed to greet the customers. (Id.) Plaintiff maintained that this was harassment because, clearly, she needed to greet a customer in order to communicate with him or her. (Id.) Moreover, Rose did not make a comment when Schlogel was rude to a customer. (Id. at 3.) This same customer "made a threatening statement": "'I see why everybody is always trying to blow you guys up or shoot at you.'" (Id.) Neither Rose nor any other member of management reported this statement although they had a duty to provide USPS employees with a safe workplace. (Id.)

Plaintiff alleged in the Information that the two events and "a prior EEO reprisal" caused her to be subjected to a hostile environment. (Id. at 2.) Plaintiff had lodged a prior EEO complaint against Rose. (Id. at 3.) Also, Schlogel had, "[o]n numerous occasions," tried to intimidate Plaintiff by closely standing behind her in her work area. (Id. at 3-4.)

Following an unsuccessful discussion of her charges with a Dispute Resolution Specialist, Plaintiff filed an EEO Complaint of Discrimination about the two February events. (Compl. Ex. at 8-17, ECF 1-1.)

The day after Plaintiff filed the EEO Complaint, she requested an appointment with a Dispute Resolution Specialist and later filed an Information for Pre-Complaint Counseling about an event that occurred on June 1. (Compl. Ex. at 1-7, ECF 1-1.) She alleged that on that day Schlogel had refused to wait on a young African-American male customer who was next in line to be served. (Id. at 1.) Schlogel told the customer to go to Plaintiff and then proceeded to wait on the next customer, a Caucasian female. (Id. at 2.) The African-American customer asked Plaintiff why Schlogel did not want to wait on him and declined

when Plaintiff asked if he wanted to file a complaint or speak to a manager. (Id.) After the customer left, Plaintiff told Raymond Patterson, a Caucasian male and manager, what had happened. (Id.) Patterson replied that maybe the customer wanted a woman to wait on him. (Id.) Plaintiff then told Rose of what had happened, but she replied that she was not at that branch all the time and could not control what went on. (Id.) Rose also refused to have a meeting with Plaintiff, Patterson, and Schlogel, as requested by Plaintiff, to talk about how to correct the problem of a hostile work environment. (Id. at 3, 4.) Although she was not the person harassed when Schlogel discriminated against the African-American customer, she was affected by the offensive conduct. (Id. at 4-5.) Also, Patterson violated the Rehabilitation Act of 1973 when he gave her a modified assignment without giving her union representation or contacting the union. (Id. at 5.) Because of Schlogel's conduct and management's response, Plaintiff was discriminated against because of her race, color, sex, age, and disability and in retaliation for her prior EEO activity about the February events. (Id. at 1, 6.)

Plaintiff's allegations about the June event were construed as an amendment to her EEO Complaint of Discrimination. (Def. Mot. Ex. B at 1, ECF 5-2.) The Complaint was dismissed for failure to state a claim. (Id. at 5.)

This action followed. Plaintiff alleges in her complaint that she has been discriminated against because of her race and color, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e through 2000e-17 (Title VII); her age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621-634; her disability, in violation of the American with Disabilities Act (ADA), 42 U.S.C. § 12101-12213; and her

- 4 -

prior EEO activity.[4] (Compl. at 1-2.) The discriminatory acts occurred on February 16, 2010, February 20, 2010, and June 1, 2010. (Id. at 3.) The allegations supporting her claims are as described above.

Donahoe argues that (a) he is entitled to summary judgment because Plaintiff has failed to show an actionable adverse employment action and (b) Plaintiff's claims of harassment and a hostile work environment should be dismissed because Plaintiff failed to (i) show a causal link between those alleged conditions and her protected group status and (ii) show that those conditions affected a term, condition, or privilege of her employment.

Plaintiff counters that it is she who is entitled to summary judgment.[5]

**Discussion**

Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). "'Material facts are those which might affect the outcome of the lawsuit. A dispute over an issue of fact is "genuine" if there is sufficient evidence to allow a reasonable jury to find for the non-moving party on that issue.'"

---

[4] Although Plaintiff cited the Rehabilitation Act of 1973 in her Information for Pre-Complaint Counseling about the June 2010 event, she did not list that on her complaint.

[5] Plaintiff raises several issues in her response/motion that she did not raise in her complaint. For instance, she cites grievances she filed with her union in 1998, including some challenging work done by Rose in violation of the collective bargaining agreement, and incidents between her and Schlogel in 2009. Insofar as these new allegations are separate claims, they are improperly before the Court. Insofar, as they are submitted in support of Plaintiff's pending complaint, they have been considered and determined to be irrelevant.

**Marksmeier v. Davie**, 622 F.3d 896, 899-900 (8th Cir. 2010) (quoting DuBose v. Kelly, 187 F.3d 999, 1000-01 (8th Cir. 1999)).

"The movant 'bears the 'initial responsibility of informing the . . . [C]ourt of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" **Torgerson v. City of Rochester**, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp., 477 U.S. at 323) (third and fourth alterations in original). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" **Id.** (quoting Celotex Corp., 477 U.S. at 324). The nonmovant must do more than "assert[ ] 'the mere existence of *some* alleged factual dispute between the parties'; the [nonmovant] must assert that there is a '*genuine* issue of *material* fact.'" **Quinn v. St. Louis Cnty.**, 653 F.3d 745, 751 (8th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

Additionally, "[t]here is no 'discrimination case exception' to the application of summary judgment . . . ." **Torgerson**, 643 F.3d at 1043.

Plaintiff has presented no direct evidence of discrimination. See **Libel v. Adventure Lands of Am., Inc.**, 482 F.3d 1028, 1034 (8th Cir. 2007) (defining direct evidence of discrimination as "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action") (internal quotations omitted). Consequently, she must first establish a prima facie of

discrimination, thereby creating a rebuttable presumption of discrimination. See **Jackson v. United Parcel Serv., Inc.**, 643 F.3d 1081, 1086 (8th Cir. 2011) (Title VII); **Rahlf v. Mo-Tech Corp.**, 642 F.3d 633, 637 (8th Cir. 2011) (ADEA); **Hughes v. Stottlemyre**, 506 F.3d 675, 678-79 (8th Cir. 2007) (retaliation); **Libel**, 482 F.3d at 1034 (ADA). The burden then would shift to Donahoe to provide a legitimate nondiscriminatory reason for the complained-of action. See **Jackson**, 643 F.3d at 1086; **Rahlf**, 642 F.3d at 637; **Hughes**, 506 F.3d at 679; **Libel**, 482 F.3d at 1034. If he does so, the presumption of discrimination disappears and Plaintiff has the burden of showing that Donahoe's proffered reason is a pretext for discrimination. See **Jackson**, 643 F.3d at 1086; **Rahlf**, 642 F.3d at 637; **Hughes**, 506 F.3d at 679; **Libel**, 482 F.3d at 1034.

For Plaintiff to establish a prima facie case of discrimination, whether it be under Title VII, the ADEA, or the ADA, she "must show (1) [s]he is a member of a protected class, (2) [s]he met [her] employer's legitimate expectations, (3) [s]he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." **Pye v. Nu Aire, Inc.**, 641 F.3d 1011, 1019 (8th Cir. 2011) (Title VII case); accord **Rahlf**, 642 F.3d at 637 (ADEA case); **Tusing v. Des Moines Indep. Comty. Sch. Dist.**, 639 F.3d 507, 518 (8th Cir. 2011) (ADA case)[6]; **Norman v. Union Pacific RR Co.**, 606 F.3d 455, 460-61 (8th Cir. 2010) (Title VII gender case). When the claim is one of retaliation, the prima facie case requires the plaintiff to show that (a) she engaged in statutorily protected conduct, (2) defendant took an adverse employment action against her, and (3) there was a causal link

---

[6]In an ADA case, the plaintiff must show at the second step that she met the employer's legitimate expectations "with or without a reasonable accommodation." See **Libel**, 482 F.3d at 1034.

between the two actions.  **McCullough v. Univ. of Ark. for Med. Sciences**, 559 F.3d 855, 864 (8th Cir. 2009).

Thus, no matter whether the claim is one under Title VII, the ADEA, the ADA, or for retaliation, a prima facie case requires a showing of an adverse employment action.  "An adverse employment action is 'one that produces a *material* employment disadvantage.'" **Pye**, 641 F.3d at 1019 (quoting Jackson v. UPS, Inc., 548 F.3d 1137, 1141 (8th Cir. 2008)).  "'This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects . . . .  Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.'"  **Wilkie v. Dep't of Health and Human Servs.**, 638 F.3d 944, 955 (8th Cir. 2011) (quoting Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007)).  "'[P]etty slights or minor annoyances that often take place at work and that all employees experience'" are not adverse employment actions.  **Gilbert v. Des Moines Area Cmty. Coll.**, 495 F.3d 906, 918 (8th Cir. 2007) (quoting Burlington Northern and Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006)).

Plaintiff complains of being asked to return to a sales window when she was on break and of being asked to greet customers although she was clearly doing so.  These requests she attributes, in part,[7] to an impermissible discriminatory motive.  The requests are not, however, more than a workplace annoyance, no matter how deeply felt by Plaintiff, and are not adverse employment actions.  See e.g. **Burkhart v. Am. Railcar Indus., Inc.**, 603 F.3d

---

[7]She also describes the requests as harassment.  This claim will be addressed below.

472, 477 (8th Cir. 2010) ("standoff attitude" by colleagues toward plaintiff and cessation of use of nickname were not adverse employment actions); **Clegg**, 496 F.3d at 926-27 ("unpalatable or unwelcome" minor changes in working conditions, e.g., no orientation and not being immediately provided with several needed items, were not adverse employment actions); **Spears v. Mo. Dep't of Corrs. and Human Resources**, 210 F.3d 850, 854 (8th Cir. 2000) (performance rating which plaintiff contended "'demeaned her in the eyes of her coworkers" was not adverse employment action).

Plaintiff does not allege that either request had any negative consequence other than to offend her. Indeed, she does not challenge Rose's averment that she was not issued any disciplinary action in conjunction with the internal observations of February 16, 2010, and February 20, 2010.[8] Cf. **Higgins v. Gonzales**, 481 F.3d 578, 585 (8th Cir. 2007) (finding that complained-of lack of mentoring or supervision was not adverse employment action given the absence of any effect by such lack on Title VII plaintiff's employment situation, including no decrease in pay or benefits, and no effect on future career prospects).

Plaintiff also complains of an incident in June 2010 when Schlogel did not wait on the next-in-line customer, an African-American male, and referred him to her instead and when a "threatening" remark by a customer was not sufficiently addressed. Again, other being offensive to Plaintiff, there is nothing in either event that caused any concrete harm to her. See **Malone v. Ameren UE**, 646 F.3d 512, 517 (8th Cir. 2011) (affirming grant of summary judgment in Title VII case in which three of four incidents cited by plaintiff were

---

[8]See (Def. Mot. Ex. G ¶ 4, ECF 5-7.)

not directed to him); **Gagnon v. Sprint Corp.**, 284 F.3d 839, 850 (8th Cir. 2002) ("It is well-settled this circuit that ostracism and rudeness by supervisors and co-workers do not rise to the level of an adverse employment action.").

Plaintiff cites the two February and the June incidents as evidence of harassment and a hostile work environment.

"To sustain a claim for harassment/hostile work environment, a plaintiff must show that [s]he 'is a member of a protected group, that there was unwelcome harassment, that there was a causal nexus between the harassment and membership in the protected group, and that the harassment affected a term, condition, or privilege of employment.'" **Pye**, 641 F.3d at 1018 (quoting <u>Watson v. CEVA Logistics U.S., Inc.</u>, 619 F.3d 936, 942 (8th Cir. 2010)). Additionally, when the claim is one for co-worker harassment, a plaintiff must also show that "the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." **Jenkins v. Winter**, 540 F.3d 742, 748 (8th Cir. 2008); <u>accord</u> **Palesch v. Mo. Comm'n on Human Rights**, 233 F.3d 560, 566 (8th Cir. 2000).

"'A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" **Pye**, 641 F.3d at 1018 (quoting <u>Smith v. Fairview Ridges Hosp.</u>, 625 F.3d 1076, 1083 (8th Cir. 2010)). "Relevant factors for determining whether conduct rises to the level of harassment include the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.'" **Id.** (quoting <u>Singletary v.</u>

Mo. Dep't of Corr., 423 F.3d 886, 892 (8th Cir.2005)). "The standard is a demanding one, and '[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' will not suffice," **Watson**, 619 F.3d at 942 (quoting Arraleh v. Cnty. of Ramsey, 461 F.3d 967, 979 (8th Cir. 2006)) (alteration in original), nor will "'[m]erely rude or unpleasant conduct,'" **Wilkie**, 638 F.3d at 953 (quoting Cross v. Prairie Meadows Racetrack and Casino, Inc., 615 F.3d 977, 981 (8th Cir. 2010)), or personality conflicts, **Palesch**, 233 F.3d at 567. "Further, the hostile work environment must be both objectively and subjectively abusive." **Watson**, 619 F.3d at 942.

In the instant case, Plaintiff has failed to show that (1) the complained-of conduct rose to the level of harassment, (2) a causal connection exists between that conduct and her membership in a protected group, and (3) the conduct affected a term, condition, or privilege of her employment. Rather, at best, she has shown that there was occasionally an unreasonable request of her and, in the case of the alleged threatening remark, an inappropriate response by supervisors to a situation.

Of the four incidents cited by Plaintiff, only the two in February were directed at her. "Sporadic or casual comments are unlikely to support a hostile work environment claim." **Carter v. Chrysler Corp.**, 173 F.3d 693, 702 (1999). See also **Jenkins v. Mabus**, 646 F.3d 1023, 1027 (8th Cir. 2011) (five offensive sexually-suggestive comments did not meet the "high threshold for a hostile work environment"); **Cross**, 615 F.3d at 981 (four incidents over two years did not rise to level of harassment). And, the four incidents cited by Plaintiff did not refer in any way to her membership in a protected group, nor is there any evidence to support an inference that such a reference was implied. See **Smith**, 625 F.3d at 1083

(finding that discriminatory nature of incidents cited in support of claim of hostile work environment was based on "speculation and conjecture" and rejecting claim); **Bogren v. Minn.**, 236 F.3d 399, 407 (8th Cir. 2000) (rejecting claim of hostile work environment by plaintiff who failed to identify any instance in which she was subjected to racially or sexually harassing conduct or language and who also failed to demonstrate that her race or gender played any part in how she was treated by her instructors); **Palesch**, 233 F.3d at 567-68 ("bare allegations" that plaintiff was isolated from social activities and ignored by co-workers and supervisors because of her race or gender failed to establish required causal nexus as a matter of law). Finally, as discussed above, Plaintiff has submitted no evidence that the incidents at issue affected a term, condition, or privilege of her employment. See **Habib v. NationsBank**, 279 F.3d 563, 567 (8th Cir. 2001) (requiring more than "mere speculation, conjecture, or fantasy" to support claim of unlawful discriminatory adverse employment action).

Plaintiff further argues that the incidents were in retaliation for her protected conduct of complaining about discrimination, specifically, EEO activity on August 6, 2008, and in January 2000. Plaintiff also argues that the June incidents were taken in retaliation for her February complaint. The Court notes that the first – Schlogel's alleged refusal to wait on the African-American customer next in line, was not directed at her and the second – the supervisors' alleged inadequate response to a threat – was directed at her only insofar as she is an employee of the USPS.

To survive summary judgment on her retaliation claim, as noted above, Plaintiff must demonstrate a prima facie case by showing that "'(1) she engaged in a protected activity, (2)

she suffered an adverse employment action, and (3) [there was] a causal connection between the protected activity and the adverse employment action.'" **Jackson**, 548 F.3d at 1142 (quoting Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 502 (8th Cir. 2005)) (alteration in original). Employment actions that cannot be characterized as adverse include, but are not limited to, "changes in the terms, duties, or work conditions that cause no materially significant disadvantage to the employee"; "disappointment with changes in one's employment situation"; and changes in policies or new policies that are applied to all similarly situated employees. **Sowell v. Alumina Ceramics, Inc.**, 251 F.3d 678, 684 (8th Cir. 2001). For the reasons discussed above, Plaintiff's cited examples of retaliatory actions fail to describe an adverse employment action. And see **Fercello v. Cnty. of Ramsey**, 612 F.3d 1069, 1078-79 (8th Cir. 2010) (relocation of office to one without a window was not adverse employment action when accompanied by no evidence that relocation rendered employee unable to complete duties or "otherwise interfered with her employment to an extent that would deter a reasonable person from making a harassment claim"); **Thorn v. Amalgamated Transit Union**, 305 F.3d 826, 831 (8th Cir. 2002) (fact that employee took offense at supervisor's attitude did not support claim of unlawful reprisal discrimination).

## Conclusion

Plaintiff's allegations of being subjected to impermissible discrimination, a hostile work environment, and retaliatory actions because of her race, color, age, disability, and protected activity are, under the governing standard, insufficient to defeat the pending motion for summary judgment.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of Patrick R. Donahoe for summary judgment is **GRANTED**. [Doc. 3]

**IT IS FURTHER ORDERED** that the motion of Sherille Harris for summary judgment is **DENIED**. [Doc. 15]

An appropriate Judgment shall accompany this Memorandum and Order.

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of November, 2011.